IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

STEPHANIE ROBERSON

VS.                                    CIVIL ACTION NO. 2:10cv225-KS-MTP

COMMISSIONER OF SOCIAL SECURITY,
Michael J. Astrue

OPINION AND ORDER

This cause is before the Court on a complaint filed by Stephanie Roberson

pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the

Commissioner of Social Security that denied her claim for supplemental security income

("SSI").  This matter is now before the Court on Defendant's Motion to Affirm the

Decision of the Commissioner [14] and on Plaintiff's Memorandum in Support of

Response in Opposition to Motion to Affirm [16].  The Court has received a Report and

Recommendation from Magistrate Judge Michael T. Parker [17] and an Objection to the

Report and Recommendation [18] filed by Ms. Roberson. The Court has considered

pleadings, the transcript, the applicable law, and the above documents and finds that

the Commissioner's decision should be affirmed for the following reasons:

**Procedural History**

Plaintiff applied for supplemental security income benefits ("SSI") under the Social

Security Act on October 8, 2008, claiming disability due to back disorders and blindness/low

vision with an onset date of September 10, 1999.  (Tr. 8-14, 60, 88-90.)  Her claims were denied

initially on December 16, 2008, and upon reconsideration on February 20, 2009.  (Tr. 60-61.)

1

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on April 8, 2009.  (Tr. 72-74.)  Plaintiff was appointed a representative (non-attorney) on May 29, 2009.  (Tr. 80-82.)  On January 6, 2010, the hearing requested by Plaintiff was convened before ALJ Nancy L. Brock.  (Tr. 41.)  ALJ Brock heard testimony from Plaintiff and Thomas Stewart, a vocational expert ("VE").  (Tr. 37, 41-59.)  Employing the five-step sequential evaluation process specified in 20 C.F.R. § 416.920(a), on January 22, 2010, the ALJ rendered her decision that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 5-14.)  Plaintiff then requested review by the Appeals Council on January 23, 2010.  (Tr. 4.)  The Appeals Council found no basis for changing the decision of the ALJ, and on July 19, 2010, denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3.)

Aggrieved by the Commissioner's decision to deny benefits, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a complaint in this court on September 13, 2010, seeking an order reversing the Commissioner's final decision and awarding her benefits.  Complaint [1].  The Commissioner answered [8] the complaint denying that Plaintiff is entitled to any relief.  The parties having filed dispositive motions pursuant to the Local Standing Order in Social Security Cases [3], the matter is now ripe for decision.

### Medical/Factual History

Plaintiff was fifty-one years old at the time of the hearing before the ALJ on January 6, 2010.  (Tr. 44.)  Her alleged onset disability date is September 10, 1999.[1]  (Tr. 8, 88, 91.)

---

[1]As pointed out by Defendant, regardless of Plaintiff's alleged onset disability date, SSI is not payable until the month following the month a claimant files an application and meets all the other requirements for eligibility. *See* 20 C.F.R. § 416.335.

Plaintiff has an Associates Degree in secretarial science and has past work experience as a

secretary, motel housekeeper, fast food cashier, kitchen helper, and a convenience store clerk.

Plaintiff has not worked since 1999; she was injured on the job when she was hit with a forklift

loaded with "pellets." As a result, Plaintiff has a bulging disk in her lower back, lower back pain

and left shoulder pain. Plaintiff testified during the hearing that she filed a workers'

compensation claim, but never received any benefits. Plaintiff also testified that she is blind in

her right eye, and has impaired vision in her left eye. (Tr. 45-57.)

The record reflects that on July 18, 2007, Plaintiff went to the emergency room at Forrest

General Hospital complaining of chronic back pain and other ailments. On exam, she was in no

acute distress and exhibited mild midline spinal tenderness and increased pain with bending and

twisting. She was advised to take her medications as prescribed and increase her fluid intake.

(Tr. 198-200.)

In August of 2007, Plaintiff saw Dr. Robert Moore at the Southeast Mississippi Rural

Health Initiative, Inc. ("SMRHI") to refill her prescriptions. She stated that her medication

helped with her joint pain, and on exam she had mild discomfort with range of motion testing.

(Tr. 175.)

In September of 2007, Plaintiff saw Dr. Riordan at Crusader Community Health in

Illinois for complaints of pain in her left shoulder and back. In November of 2007, Plaintiff saw

Dr. Riordan for complaints of pain in her left shoulder, neck, back and legs, and tingling. Dr.

Riordan noted that Plaintiff had undergone physical therapy and her x-rays were "ok." She was

assessed with cervical and lumbar spondylitis[2] and left shoulder impingement and was referred

for physical therapy.  (Tr. 220.)

On January 18, 2008, Plaintiff saw Dr. Ike Okorie at SMRHI for lower back pain and

requesting physical therapy.  Her bilateral leg raise test was negative.  She was advised to follow

up with Dr. Moore.  Plaintiff saw Dr. Moore on January 24, 2008, for left shoulder and lower

back pain and requested an EMG[3] referral.[4]  Dr. Moore noted that she was ambulatory but did

have some pain during range of motion test.  She was referred to physical therapy for

deconditioning and myalgias.[5]  (Tr. 173-74.)

In March of 2008, Plaintiff saw Dr. Moore twice for follow-up, complaining of back

and lower leg pain.  Plaintiff informed Dr. Moore that her most recent MRI, performed in 2006,

showed minimal disk disease at L5-S1 and possible bursitis of the left shoulder.  On exam, Dr.

Moore noted mild pain with range of motion of her back.  He noted Plaintiff could touch her toes

and had a negative straight-leg raising test, but complained of pain during these movements.  Dr.

Moore prescribed physical therapy for an additional two months per Plaintiff's request.  (Tr.

171-72.)

On June 2, 2008, Plaintiff went to the emergency room at Forrest General Hospital

---

[2]Spondylitis is "Inflammation of one or more of the vertebrae."  *See* http://dictionary.webmd.com/terms/spondylitis (last visited 9/22/11).

[3]"An electromyogram (EMG) measures the electrical activity of muscles at rest and during contraction." *See* http://www.webmd.com/brain/electromyogram-emg-and-nerve-conduction-studies (last visited 9/15/2011).

[4]An EMG study performed later that month was normal. (Tr. 197.)

[5]Myalgia is "pain in a muscle or muscles."  *Dorland's Illustrated Medical Dictionary* 1162 (29th ed. 2000).

complaining of difficulty seeing.  Plaintiff was examined by Dr. Brian Archer and was assessed

with a visual field defect and possible dislocated lense in the right eye; she was referred to an

ophthalmologist.  (Tr. 186-87.)  On or about the same day, Plaintiff saw Dr. Julie Lynn at

Hattiesburg Clinic.  She was assessed with a retinal detachment/horseshoe tear and "macula off

OD."  She was referred to Dr. Jamie Jimenez for treatment.  (Tr. 203-06.)  Plaintiff visited the

Southern Eye Center on June 3, 2008, and Dr. Jimenez performed a vitrectomy[6] on Plaintiff's

right eye.  (Tr. 240-43.)

Plaintiff visited the Southern Eye Center one week later; everything looked stable and

she was advised to return in one month. Plaintiff visited the Southern Eye Center on June 24,

2008, and June 30, 2008, for follow-up visits and was again referred to Dr. Jimenez for surgery

and treatment.  (Tr. 236-39.)

On July 16, 2008, Plaintiff went to the emergency room at Forrest General Hospital

complaining of right eye pain and drainage and difficulty seeing, noting that she had recently had

a retina repair procedure.  Plaintiff was examined by Dr. John Jennings and was prescribed

medication and advised to follow up with her ophthalmologist.  (Tr. 177-81.) The following day

she visited the Southern Eye Center, and it was recommended that Plaintiff go to UMC

(presumably University Medical Center) for repair.  (Tr. 234-35.)

Plaintiff saw Dr. Moore at SMRHI in July of 2008, complaining of back discomfort and

requesting another MRI for evaluation.  Dr. Moore reported that Plaintiff's physical therapy was

complete and her physical therapist stated that she had no functional limitations.  (Tr. 176).  On

---

[6]"[S]urgical extraction usually via the pars plana of the contents of the vitreous chamber of the eye."  *Dorland's Illustrated Medical Dictionary* 1976 (29th ed. 2000).

exam, Plaintiff was ambulatory and in no distress and was assessed with lumbago (low back

pain). Dr. Moore stated he would repeat the MRI per Plaintiff's request since she complained of

pain going down her legs. (Tr. 176.)

On August 11, 2008, Plaintiff went to the Southern Eye Center complaining of flashes of

light and floaters in her left eye. (Tr. 232-33.)

On September 15, 2008, Dr. Jimenez at the Southern Eye Center performed a two-port

trans-pars plana vitrectomy with lensectomy on Plaintiff's right eye. He noted that she tolerated

the procedure well. (Tr. 230-31.) On September 25, 2008, Plaintiff went to the Southern Eye

Center complaining of seeing a hair-like object in her left eye. She was assessed with a detached

retina and was advised to sleep on her left side and return in three weeks. (Tr. 228-29.)

In October of 2008, Plaintiff returned to the Southern Eye Center complaining of a

recurrence of a floater in her left eye. On exam, it appeared that her retina was rolling back,

which the doctor concluded did not require any treatment unless the condition got worse. (Tr.

226-29.)

In December of 2008, Plaintiff saw Dr. Stephen Massey for a consultative examination at

the request of Disability Determination Services. Plaintiff alleged disability on the basis of

pinched nerves in her lower back and a left shoulder problem. She complained of constant lower

back pain, muscle spasms, tingling and numbness. On exam, Dr. Massey noted Plaintiff had no

vision in her right eye, and her left eye vision was 20/15 with correction. She had full range of

motion of her neck, lumbar, and upper and lower extremities and there was no back or neck

tenderness or spasms. She had no difficulty getting on or off of the examination table. She was

able to squat, but unable to walk heel-to-toe as she was unsteady. Neurologically, there was no

motor or sensory abnormality or atrophy.  A Tinel's test was weakly positive over the median

nerves at both wrists; her deep tendon reflexes were two out of four in the arms and one out of

four in the legs; the straight-leg raising test and Romberg test were negative.  Plaintiff had full

strength and normal fine and gross manipulation.  Dr. Massey's diagnoses were blindness in the

right eye, chronic low back pain and neck/left shoulder pain.  (Tr. 210-14.)  A December 2008 x-

ray of Plaintiff's left shoulder was unremarkable.  (Tr. 207-09.)

In April of 2009, Plaintiff saw Dr. Riordan at Crusader Community Health in Illinois,

complaining of left shoulder, cervical, and lumbar pain.  He reported that Plaintiff had cervical

and lumbar spondylosis[7] and left shoulder impingement, gluteus muscle weakness, and

trochanter[8] tendinitis, and recommended physical therapy.  Dr. Riordan opined that Plaintiff was

"disabled at this time" and unable to work, but stated that her "buttocks problems may improve

with significant exercise." (Tr. 215-17.)

On August 20, 2009, Plaintiff visited Hattiesburg Clinic for her annual eye exam.  She

complained that she still sees floaters in her left eye.  Dr. Rochelle Hopkins noted no new holes

or tears.  She noted retinal scarring from a laser procedure and that the condition was stable, and

that Plaintiff had presbyopia[9] and myopia (nearsightedness).  (Tr. 245-46.)

During the hearing before the ALJ on January 6, 2010, Plaintiff testified that she has

severe lower back pain and shoulder pain and that the pain radiates into her legs.  The pain limits

---

[7]"[A] general term for degenerative spinal changes due to osteoarthritis." *Dorland's Illustrated Medical Dictionary* 1684 (29th ed. 2000).

[8]"[E]ither of the two processes below the neck of the femur." *Dorland's Illustrated Medical Dictionary* 1881 (29th ed. 2000).

[9]"Hyperopia and impairment of vision due to advancing years or to old age." *Dorland's Illustrated Medical Dictionary* 1453 (29th ed. 2000).

what she can do because it causes weakness, numbness, muscle spasms, causes her fingers and

toes to lock, and limits her ability to lift, push, pull, and bend.  She testified that she can only sit

and stand for about five minutes without moving around.  She also testified that her mediation

makes her drowsy.  Because of the foregoing, Plaintiff testified that she cannot work.  (Tr. 46-

56.)

## II.  STANDARD OF REVIEW

When a party objects to a Report and Recommendation this Court is required to "make a

*de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  See also *Longmire v.*

*Gust*, 921 F.2d 620, 623 (5th Cir. 1991) (Party is "entitled to a *de novo* review by an Article III

Judge as to those issues to which an objection is made.") Such review means that this Court will

examine the entire record and will make an independent assessment of the law. The Court is not

required, however, to reiterate the findings and conclusions of the Magistrate Judge. *Koetting v.*

*Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) nor need it consider objections that are frivolous,

conclusive or general in nature.  *Battle v. United States Parole Commission*, 834 F.2d 419, 421

(5th Cir. 1997).  No factual objection is raised when a petitioner merely reurges arguments

contained in the original petition.  *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993).

## III.  PETITIONER'S OBJECTION AND ANALYSIS

In her Objection [18] Plaintiff makes a statement of her employment history and some of

her medical issues.  She makes statements about her current medical condition, including the

state of her sight, notably complaining that she is blind in her left eye as well as her right eye.

She makes statements regarding difficulty with doctors visits, including getting on and off of the

examination table and the degree of difficulty that she had and severe pain that she suffered

during the examinations. She also makes statements regarding her difficulty in performing daily

tasks of living and help that she must have to continue with her life.  In her Objections she does

not address specifically any of the findings made by Judge Parker other than the specific

allegation she makes concerning her current condition of her health.

In this case the initial burden is on the Plaintiff to prove that she is disabled and to set

forth a *prima facie* case satisfying this burden.  The Commissioner then bears the burden of

establishing that the claimant is capable of performing substantial gainful activity and, therefore,

not disabled. The Commissioner uses the Five Step Sequential Procedure set forth in 20 C.F.R. §

404.1520(b)-(f) (1988).

The Administrative Law Judge went through the Five Step Sequential Process and

addressed each of the issues.  Judge Parker, in his Report and Recommendation,  follows through

with a thorough statement of the evaluation by Administrative Law Judge Brock.  There were

many objective medical tests performed on the Plaintiff.

IV.  THE STANDARD OF REVIEW OF THE COMMISSIONER'S DECISION

This Court's review of the Commissioner's decision is limited to an inquiry into whether

or not there is substantial evidence to support the Commissioner's findings and whether the

correct legal standards were applied in evaluating the evidence.  Judge Parker's Report and

Recommendation follows the appropriate standard of review. Substantial evidence is "more than

an scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Hames v Heckler*, 707 F. 2d 162, 164 (5th Cir.

1983).  To be substantial, the evidence "must do more than create a suspicion of the existence of

the fact to be established." *Hames*, 707 F. 2d at 164 (citations omitted). Conflicts in the

evidence are for the Commissioner not the Court to resolve. *Selders v Sullivan*, 914 F. 2d 614,

617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo* or substitute

its judgment for the commissioner's, "even if the evidence preponderates against" the

commissioner's decision. *Harold*, 682 F. 2d at 475. If the decision is supported by substantial

evidence, it is conclusive and must be affirmed. *Selders*, 914 F. 2d 1t 617. Moreover,

"procedural perfection in administrative proceedings is not required as long as the substantial

rights of a party have not been affected." (Citations omitted).

## V. CLAIMANTS CLAIMS

There are two primary problems alleged by the Plaintiff to cause her disability. These are

spinal problems and blindness. The Administrative Law Judge carefully considered each of

these issues in making her determination of facts in this case and in proceeding through the

sequential process. One of the determinations of fact that was made by the Administrative Law

Judge is that the Plaintiff's statements concerning the intensity, persistence, and limiting affect

of her symptoms were not credible to the extent that they were inconsistent with her residual

functional capacity assessment and with doctors reports and medical tests.

In her Objections the Plaintiff claims to be totally blind (left and right eye). While she is

in fact blind in her right eye, nowhere in her record is she indicated to be blind in her left eye.

Her argument overstates the physical symptoms and problems that she has. As stated above,

there were a number of objective tests performed, many of which directly refute Plaintiff's

statements.

The question for this Court to answer is whether or not there is substantial evidence that

supports the Commissioner's decision. This Court finds that there is substantial evidence and

significant credible evidence that supports the Commissioner's decision.  Therefore, this Court is

required to affirm the Commissioner's decision.

VI.  CONCLUSION

As required by 28 U.S.C. § 636(b)(1) this Court has conducted an independent review of

the entire record and a *de novo* review of the matters raised by the objections.  For the reasons

set forth above, this Court concludes that the Plaintiff's objections lack merit and should be

overruled. The Court further concludes that the Report and Recommendation is an accurate

statement of the facts and the correct analysis of the law in all regards. Therefore, the Court

accepts, approves and adopts the Magistrate Judges's factual findings and legal conclusions

contained in the Report and Recommendation. Accordingly, it is ordered that the United States

Magistrate Judge Michael T. Parker's Report and Recommendation is accepted pursuant to 28

U.S.C. § 636(b)(1) and that the complaint filed by Stephanie Roberson is **dismissed with**

**prejudice**. The Commissioner's Motion to Affirm [14] is **granted** and the denial of benefits in

this case is affirmed.

SO ORDERED this, the 13th  day of December, 20011.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE